**O'REILLY, Admr. v CLEVELAND RAILWAY COMPANY**

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 18457. Decided Feb. 9, 1942.

Harrison & Marshman, Cleveland, for plaintiff-appellee.

Squire, Sanders & Dempsey, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J.

The plaintiff, as administrator of the estate of Myles P. O'Reilly, deceased, brought this action against the defendant for the wrongful death of the decedent which occurred on January 27, 1936.

At the conclusion of the plaintiff's case, a motion by the defendant for a directed verdict was overruled. The defendant then rested without putting in any evidence, the jury returning a verdict for the plaintiff in the sum of $10,-000.00. The defendant does not predicate any error based on the amount of the verdict.

Plaintiff's evidence is to the effect that about 11 o'clock A. M. on January 27, 1936, the decedent was a passenger on the defendant's west bound street car on Euclid Avenue approaching the intersection of London Road. It was an unusually cold day, as the temperature at the time was only four degrees above zero, having been below zero in the early morning. As the result, the windows of the street car, a single car train, on

which the decedent was a passenger, were covered with frost so that it was impossible for the passengers to see out of the car.

The street car did not stop at the regular stopping place provided at the London Road intersection, but continued west and was brought to a sudden stop about seventy feet beyond the regular stopping place. The doors of the street car were opened and the decedent was permitted to alight from the car to the roadway.

At the time a heavily loaded truck with a trailer was following the street car, astride the north rail, about 25 feet behind. The street was covered with ice.

The only person who testified who saw the accident was the driver of a passenger automobile also proceeding in a westerly direction some 100 feet behind the truck. He testified that at the moment the street car began to slow down to come to a sudden stop, the driver of the truck swerved to the right evidently to avoid a collision with the street car. This caused the truck to skid on the icy street, and the truck and trailer buckled in a jack-knife fashion and the witness observed the decedent about ten feet west of the truck and also about the same distance north of the street car "bobbing around" and "kind of getting his footing." The witness further testified as to the decedent, "I could see him over the hood of the truck, then he disappeared" under the truck. The next time the witness saw the decedent he was lying dead under the trailer of the truck near the north curb.

There was also evidence that following the event there were heavy marks on the road showing that the place where the truck started to skid was west of the car stop pole and that the pavement at the place where the car stopped

was rutted and slippery, which condition to some extent was concealed by the presence of snow. Also that the street at the regular car stop was free from ice and was covered with packed snow which had been worn through in many places to the brick pavement by the traffic.

The evidence shows that the decedent had not reached the north curb but was in the street about midway between the street car and the curb when he was struck by the truck. It is also a fair inference from the undisputed evidence in the case that the skidding of the truck was the direct result of the unexpected and sudden stopping of the street car at other than the regular stopping place.

It is the claim of the defendant that when the plaintiff's decedent was killed, he had alighted from the street car so that the relation of passenger and carrier had been terminated and that, therefore, the defendant is not legally responsible for what happened afterwards.

The duty of the common carrier of passengers is to exercise the highest degree of care for the safety of its passengers, consistent with the practical operation of the system. This duty, when applied to the circumstances of a passenger leaving a street car, is said to require the carrier to exercise the highest degree of care consistent with the practical operation of the system in providing a reasonably safe place to alight and to protect the passenger, while alighting, from dangers created by its own conduct in the management of its vehicles. Such duty of the carrier continues until the relationship of carrier and passenger is terminated and protects the passenger from any dangers created

by the carrier in affording the passenger the opportunity of leaving the street car.

It must be conceded that if plaintiff was given the opportunity to alight in a reasonably safe place and that at the time he was thus discharged the defendant, by its own acts, had not, in the act of discharging him, created a situation of danger through the operation of its car or the conduct of its employees, there can be no recovery.

When the street car went beyond the regular stop, the truck driver had the right to assume he could proceed in safety. When the street car attempted a sudden stop, the truck unquestionably tried to avoid a collision by swerving to the north, but as the street was covered with ice, the truck skidded. This was a danger that came by attempting an irregular stop under the circumstances that might reasonably be expected to create a dangerous situation, especially where the windows of the car were so covered with frost as to make it impossible for the passenger to know whether the place where the stop was being made was a regular or an irregular stopping place, and to also obstruct his ability to see any dangers that a sudden, irregular stop may have created.

The above facts in this case differentiate it from all of the cases cited, in which a passenger who has been injured after alighting from a street car has been denied the right to recover.

In the case of Reining, Admrx., v Northern Ohio Traction & Light Company, 107 Oh St 528, the court had for consideration the following circumstances:

The plaintiff's decedent, who had been a passenger of the defendant company was permitted to alight from the car from the front left-hand vestibule. There was only one street car track on the street, so that no other car of the defendant was involved.

It was claimed that such passenger could not see what was approaching while the motorman had an unobstructed view. An automobile was approaching as the decedent stepped on to the pavement. The motorman failed to warn him of the danger. There was only a clearance of two (2) feet between the street car and the curb. The plaintiff's decedent was struck and killed almost instantly after leaving the street car.

The court held:

"1. Although a passenger upon a street car continues to be a passenger until he has accomplished the act of alighting in safety, and although the company owes him a high degree of care so long as the relation of carrier and passenger continues, such relation terminates and the duty of the company as a carrier is ended when it has discharged him safely upon the street, and the company is not responsible for dangers which subsequently arise from conditions not of its own creation."

"2. It is not the duty of a conductor or motorman to warn passengers upon leaving a street car at a regular stop of the danger of automobile traffic in a city street, and failure to caution such passenger of approaching automobiles will not render the company liable for injuries caused by an automobile passing the car at an excessive rate of speed, and striking the passenger after he had alighted from the street car in safety."

It must be noted that in this case the street car stopped at a regular stopping place, and that no other act of the defendant, other than the stopping of the

street car in the ordinary manner, could have in any way contributed to the cause of the accident, unless there was a legal duty to warn the plaintiff of the approaching danger for which danger the carrier was in no way responsible.

The facts in the case of Cleveland Railway Co., v Sebesta, 121 Oh St 27, were as follows:

Emil Sebesta was a passenger on one of the street railway company's street cars. The accident happened at 6:15 A. M. in July and was, therefore, in broad daylight. There were no weather conditions present which would in any way tend to produce the accident. The street car involved was proceeding east on Euclid Avenue. Sebesta wanted to leave the street car at East 115th St. His place of work was at about East 116th Street. The next regular car stop was at East 118th or East 119th St. As the street car approached East 115th Street, Sebesta signaled the conductor and started to walk to the center exit. The street car stopped but the conductor did not see Sebesta or open the door. After a brief stop the conductor signaled the motorman to proceed, which he did. Sebesta called out, "here" intending that the conductor should have let him leave the car. The conductor then signaled for a stop which was accomplished about 75 feet east of the first stop; the door was opened and Sebesta stepped into the street and was almost instantly hit by an east-bound automobile. While he was waiting for the car to stop the second time, Sebesta testified that he looked to the rear to see what was coming and that except that his view was partially obstructed by the trailer, he could see the vehicles approaching but did not look as he stepped off the car. The court held:

"It is the duty of a passenger upon a street car, when alighting from the car upon a public street or highway, to exercise ordinary care for his own safety against danger arising from the use of the street at that time and place by vehicular traffic; and when the stop of the street car is at a point where vehicular travel is not held in abeyance by a traffic officer, signal light or other regulations, while the street car is standing at such stop, the ordinary care required on the part of the passenger leaving the car at such point includes the duty of the passenger to look in the direction from which vehicular travel may reasonably be expected to approach, and such looking should be done at a time when it will be effective to serve the purpose designed by it; and a failure to so look constitutes such negligence as will bar a right of recovery for injuries by collision with such vehicular travel which might otherwise be avoided by the observance of the care required."

The holding of the court would seem to indicate that the decision was founded on the failure of the plaintiff to exercise ordinary care for his own safety under the circumstances of the case. It is also clear that the dissenting opinion of three of the judges was founded upon the belief that it was for the jury to say whether or not a danger was created by the carrier in making the second irregular stop, after having just left its regular place of stopping and if such a danger was created whether or not it was the proximate cause of the passenger's injury.

The case of Mahoning & Shenango Railway & Light Company v Leedy, 104 Oh St p. 487, has a direct bearing on the question of law presented in this case. In that case a passenger was carried beyond

her stop, not having gotten to the exit door before the car was started after having discharged two other passengers. She called the conductor's attention to the fact that he had not waited for her to get off and that she did want to get off. Whereupon he signaled for a second stop and before she stepped to the pavement, the conductor distracted her attention from the street dangers by saying to her in an ugly tone and manner, "why didn't you wake up; what took you so long?" As she stepped into the street she was struck by a motorcycle and injured. The court held:

"1. Where a street railway company operating its cars upon public streets has itself created a sudden situation of danger, it is the duty of such street railway company before discharging a passenger into such dangerous situation by itself created to either remove the dangerous situation or warn the passenger of its existence.

2. Where the dangerous situation created by the carrier is alike known to the carrier and the passenger, the passenger is bound to exercise ordinary care to prevent injury to herself, but where the carrier through its servant by discourteous and impatient conduct and language confuses and disturbs the passenger so as to interfere with the deliberate exercise of her faculties, it is a question for the jury whether her failure to look before stepping upon the step of the car, or before stepping upon the ground from the step amounted under the circumstances to a failure to exercise ordinary care.

3. When the carrier, a street railway company, has carried its passenger in safety and discharged her in safety on the street, and the danger was not there at that time, the carrier has discharged its obligation to the passenger, and a charge to the jury which may fairly be construed to authorize a recovery for an injury, received from an independent source, subsequent to the discharge of the passenger in a place of safety, is erroneous and prejudicial."

The principles stated in the first and third syllabi of the Leedy case are clearly applicable to the facts in the instant case. There, as here, there was evidence tending to show that the carrier, by its own conduct, created a dangerous situation with regard to its passenger while in the act of bringing its vehicle to a stop for the purpose of affording him an opportunity to leave the vehicle.

The duty of the carrier goes beyond the mere stopping of its vehicle, and the discharging its passenger on the pavement, where the circumstances are such that by the act of stopping the vehicle a sudden, dangerous situation is created with relation to the safety of such passenger as he leaves and after he has left the vehicle. The carrier must then use the highest degree of practicable care to protect the passenger from such danger.

It should further be observed that on the question of the decedent's conduct there is no evidence in the record which challenges the legal presumption that he was, at the time of the accident, in the exercise of ordinary care for his own safety.

Whether the evidence established, by the proper degree of proof, that the defendant appellant did fail to exercise the proper degree of care for the decedent, while still a passenger, which failure proximately caused his death, is a question for the jury.

Finding as we do that there is credible evidence to sustain the verdict, the judgment is affirmed.

MORGAN, J., concurs.
LIEGHLEY, PJ., dissents.